DOMINGO RIVERA ADORNO, Complainant and Appellant, *v.* LAND AUTHORITY OF PUERTO RICO, Respondent and Appellee.

No. 12508. Decided July 28, 1961.

*Vicente Géigel Polanco* and *Vicente Géigel Lanuza* for appellant. *Ramón Gandía Biscombe, Gustavo de Pedro,* and *José E. Franco Santiago* for appellee.

Division composed of Mr. Justice Blanco Lugo, as Chief Judge of Division, and Mr. Justice Rigau and Mr. Justice Dávila.

Mr. Justice Rigau delivered the opinion of the Court.

The question presented is whether the submission to arbitration of a dispute by the employer and by the union, pursuant to the express provisions of the collective bargaining agreement, is binding on a laborer who is a member of the union and who objected personally to the submission.

Complainant Domingo Rivera Adorno worked in Central Plazuela during the 1951 to 1956 grinding seasons, first as assistant boilerman and from and after 1954 as chief boilerman. These boilermen, or boilermen by trade as they are called, are the employees in charge of operating the boilers. Central Plazuela, situated in the Municipality of Barceloneta, was during those years and is at present owned by the Land Authority, a public corporation of the Commonwealth of Puerto Rico created by Act No. 26 of April 12, 1941 (Sess. Laws, p. 388, 28 L.P.R.A. § 242).

The complainant was a member of Asociación de Azucareros Profesionales de Puerto Rico and rendered services under collective bargaining agreements entered into by the Land Authority and the said Asociación de Azucareros Profesionales. At the time the laborer's discharge involved in this case there was in force a collective bargaining agreement dated April 23, 1956, which was retroactive to the commencement of the grinding season of that year and would expire on December 31, 1959. The agreement provided that the employer would pay to each chief boilerman, for a twenty-one weeks' grinding season, $2,800 in 1956, $2,800 in 1957, $2,900 in 1958, and $3,000 in 1959.

The sixth clause of the collective bargaining agreement provided in its pertinent part that:

"*Complaint and Grievance Committee.* The Asociación shall designate a representative from Central Cambalache of Arecibo, P. R., and another from Central Plazuela of Barceloneta, P. R., who shall be a boilerman employed by the Authority and who renders services to said sugar mill, to see to the strict and faithful compliance with this contract,

the discipline of the fellow boilermen, and the maintenance of the best relations between the contracting parties, and, jointly with the Authority's representative, they *shall compose the Complaint and Grievance Committee which shall attempt to settle harmoniously any disputes or complaints which may arise between the parties during the life of this contract.* If the Committee thus constituted (by the representatives, one from each party) is unable to agree on a solution of a dispute within a period of twenty-four (24) hours, such dispute shall be submitted to the consideration of a third member. *The decision of this third member shall be final and binding on the parties.* The parties agree that the third member shall be the Insular Conciliator, or the persons designated by him to act in his place." (Italics ours.)

At the end of 1956, the employer informed the complainant that he would not be employed in the 1957 grinding season nor in subsequent seasons. Since the complainant did not agree with the discharge, the employer requested an arbitration pursuant to the provisions of the sixth clause of the labor agreement transcribed hereinabove. The Complaint and Grievance Committee composed of a representative of the union and a representative of the employer, did not agree on a decision of the dispute and agreed to submit the matter to a third member. On March 6, 1957, Adolfo Collazo, Director of the Conciliation and Arbitration Bureau of the Department of Labor of Puerto Rico, designated Rafael Font González to act as a third member and to take cognizance of the complaint.

On March 15, 1957, after proper notice was given, Font González met with the representatives of the parties to hear the case on its merits, but, at the request of complainant's attorney, with which it seems that the employer also concurred or was agreed, the hearing was suspended. After several postponements at the request "of the parties" (the award does not say whether at the request of one of them or of both) the hearing of the case was set for May 2, 1957. Present that day at the meeting were the employer's repre-

sentative and Antonio Pérez Carrera, President of the Union, but neither complainant Domingo Rivera nor his attorney attended. In view of the absence of the complainant and of his attorney, the third member inquired from the president of the union the reasons for such absence, and the latter stated that he had summoned the complainant personally for the hearing. Another attempt was made to summon Rivera Adorno to the hearing, and, as stated in the award, "To this effect, the hearing of the case was suspended to enable the president of the union to come to Vega Baja by car, which he actually did, for the purpose of inviting Rivera Adorno to attend the hearing for the arbitration of his own case. About noontime Pérez Carrera returned from Vega Baja and informed us that Rivera Adorno would not appear at the hearing of the case because his attorney had already submitted it to arbitration and mailed the corresponding brief, and that his presence at the arbitration hearing was not therefore necessary and that he had been so advised by his legal counsel. A stenographic record was kept of all steps taken in connection with these proceedings and the arbitration case was heard on its merits."

The following question was submitted to the third member for decision: "To determine whether or not the alleged discharge of boilerman Domingo Rivera Adorno was justified in the light of the collective bargaining agreement." The parties (the union and the employer) were agreed that the third member should act as arbitrator. At the close of the hearing the parties were granted until May 14 to submit supplemental memoranda in support of their contentions, if they so desired. From the record of the case and of the award it does not appear categorically whether they did so.

On June 12, 1957, the third member rendered his award in writing. He briefly states the positions of the employer and of the union, makes an analysis of the matter, finds proved certain facts, and formulates his decision. The arbitrator found proved the following facts:

"1. Domingo Rivera Adorno started to work in 1951 for the Land Authority of P. R. (Central Plazuela) in his capacity as assistant boilerman.

"2. Domingo Rivera Adorno passed in 1954 to occupy the position of chief boilerman of Central Plazuela.

"3. The Land Authority of P. R. established on September 23, 1954, its policy to grant to those employees who attain the age of 65 years and who are covered by the Federal Social Security Act the right of retirement by reason of age.

"4. Domingo Rivera Adorno is at present over 70 years of age, is not in good health, and is not physically able to discharge the position of boilerman.

"5. Domingo Rivera Adorno voluntarily availed himself of the benefits of the Federal Social Security in the latter part of 1956, and is at present enjoying those benefits.

"6. The Land Authority of P. R. (Central Plazuela) did not contract the services of Domingo Rivera Adorno as boilerman for the 1957 grinding season."

On September 13, 1957, three months after the award was rendered, Domingo Rivera Adorno filed a complaint in the Superior Court, against the employer alleging that he had been discharged from work in violation of the collective bargaining agreement and requesting that the employer be ordered to pay him $8,700 for wages corresponding to the 1957, 1958 and 1959 grinding seasons. The employer answered the complaint denying the illegal discharge and alleging, as special defenses, that the complaint did not lie because the question had been decided by arbitration in accordance with the collective bargaining agreement, that the arbitration award is binding on the parties and that the complainant is bound to abide by it, and that by reason of that arbitration award the complainant is barred from filing the present action. On September 26 the employer filed a Motion for Summary Judgment urging the dismissal of the complaint, and on the 18th of the following October the complainant filed a Motion in Opposition to the Motion for Summary Judgment, enclosing therewith two sworn statements.

256

After having examined the allegations, the motions filed by both parties, the sworn statements, the collective bargaining agreement, and the arbitration award, the Superior Court, San Juan Part, sustained the Motion for Summary Judgment and dismissed the complaint which gave rise to this case. The complainant now appeals to this Court to review the judgment of the Superior Court. In the course of this opinion we will mention and discuss the errors assigned.

 In the first assignment the complainant alleges that he did not submit voluntarily to arbitration. He maintains that the arbitration between the union and the employer does not cover him because he did not submit personally and because the private rights of the complainant and not the rights of the union are in issue.

We do not agree. To uphold the complainant's position would not only be incorrect but would practically bring about a chaos in the making of collective bargaining agreements. Although the rights claimed by the complainant are private rights, they are rights arising from a contract—the collective bargaining agreement—and in that contract there was stipulated, as we have seen, the manner for settling disputes arising during the life of the contract and in connection therewith. The complainant does not question, and, on the contrary, considers valid the collective bargaining agreement entered into by the employer and the union. The rights which he claims—the rights to his employment and to the wages—are based on that agreement. The clause which creates the Complaint and Grievance Committee and which provides for a third member whose decision "shall be final and binding upon the parties," is part of that agreement. The complainant can not pretend to avail himself of the benefits of some clauses of the contract and reject others;

he can not negotiate collectively and individually at the same time.[1]

 A valid collective bargaining agreement binds the union and its members individually as well as the employer. Nor could the employer insist on negotiating individually with each employee where demand to negotiate collectively is made by a duly registered union.[2]

 When the parties enter into an agreement of this nature they substitute the arbitrator for the courts for the determination of all questions of fact and of substantive law, and they waive the right to litigate such questions before the courts. *Labor Relations Board* v. *N. Y. & P. R. S.S. Co.*, 69 P.R.R. 730, 746 (1949). In that case we stated at 753 that "We have refused to let the company blow hot and cold. Having voluntarily agreed to arbitrate, it may not relitigate before us the issues decided by the arbitrator. The same rule applies to the union." It is well to add at this time that the same rule applies to members of the union; otherwise the justice which that rule purports to make would be illusory.

The recognition that collective bargaining agreements are equally binding on the contracting parties promotes a higher degree of responsibility upon the parties thereto, and will thereby promote industrial peace. *Textile Workers* v. *Lincoln Mills*, 353 U.S. 448, 1 L.Ed.2d 972, 979 (1957), followed in *General Electric Co.* v. *Local 205, United Electrical, Radio and Machine Workers of America*, 353 U.S. 547, 1 L.Ed.2d 1028 (1957), and in *Goodall-Sanford* v. *United Textile Workers of America*, 353 U.S. 550, 1 L.Ed.2d 1031 (1957).

---

[1] The law recognizes the basic premises of civilized life. One of those premises, which has become a juridical norm, is that men must carry out their commitments. See *"The Task of Law"* in Roscoe Pound, Social Control Through Law 63 *et seq.*, Yale University Press, 1942.

[2] For an exposition of this principle, see Central Río Llano and Professional Boilermen's Association, I Decisions of the P. R. Labor Relations Board 76, 81 (1947).

In these cases it was sought precisely to enforce arbitration clauses.

■ We shall discuss jointly the second and third errors assigned because they are closely related. The second assignment alleges that the lower court erred in rendering judgment without considering the merits of the challenges made against the award by the complainant. The grounds for challenge are the alleged nonsubmission, lack of due process of law, that the award is contrary to law because it reveals passion and prejudice against the complainant, and the latter is entitled to the sum claimed. Equally substantial grounds are adduced in support of the third error, which consists in alleging that the lower court erred in rendering judgment on the validity of the award, which is void for the reasons set out above.

We rely on the foregoing discussion of the first error for determining that there was a valid submission. Nor do we find lack of due process rendering the award void. From the foregoing recital it appears that due notice was given and a hearing held. The union and the employer were represented at the hearing of the case (the union by its president), and efforts were also made beyond what is reasonably possible to compel the appearance of the appellant herein and his attorney, who waived attendance voluntarily.

There does not exist in the proceedings nor in the arbitrator's conduct any errors which may render the award void.[3] See *P.R. Labor Rel. Board* v. *Orange Crush of P.R.*, 80 P.R.R. 281, 284 (1958), and *Labor Relations Board* v. *N.Y. & P.R.S.S. Co., supra* at 746.[4]

■ Regarding the contention that the award is contrary to law, it is a well-established rule that an arbitration

---

[3] These are: fraud, misconduct, lack of due process in the conduct of the hearing, violation of public policy, lack of jurisdiction, and want of entirety in the decision of all the issues subject to controversy.

[4] See also Sarah Torres Peralta, "The Regulation of the Field of Labor Relations in the Commonwealth of Puerto Rico", 18 *Revista del Colegio de Abogados de Puerto Rico* 117, 335-46.

award, in the absence of some limitation in the arbitration agreement, can not be set aside for errors of judgment either as to the facts or as to the law. *P.R. Labor Relations Board* v. *Orange Crush, supra* at 284; *Labor Rel'n Board* v. *Soc. Mario Mercado e Hijos*, 74 P.R.R. 376, 380 (1953); *Labor Relations Board* v. *N.Y. & P.R.S.S. Co., supra* at 746-48. There is no limitation of that nature in the arbitration agreement.

That there is no passion or prejudice in the award against the complainant is implied in what we have said above on the absence of error which would set aside the award. And, with respect to the last contention that the complainant is entitled to the sum claimed, we say that that would be the sequel of an illegal discharge, but as we have seen, the arbitrator determined that the discharge was justified. For the reasons already stated, we do not believe that we should alter that determination.

The fourth and last error reproduce the allegation on the right to the wages which we have just mentioned and have already considered. A valid arbitration can not be relitigated. See § § 1715, 1719, and 1720 of the Civil Code; 31 L.P.R.A. § § 4827, 4841, and 4842.

The judgment of the Superior Court will be affirmed.